Good morning. My name is Donald Unger and I represent the petitioner Elena Coyne. May it please the Court, there are three very brief parts to my client's argument here this morning. The first one is that her case falls squarely within the language of the words of the statute. That is, she is applying for permanent resident status as a result of her marriage to the American citizen who brought her to this country as his fiancée. That's what the statute requires her to do and that's what she is doing. Could I just ask you a question? Why should we adopt a rule that would put K visa holders in a better position than those who enter with other visas? Those who enter without visas? They enter with other visas and they get married later. I think the difference is that fiancées are in a class by themselves. As I tried to explain in our brief, it's sort of a hybrid between a typical non-immigrant visitor, for example, or a student who comes to the United States expecting to stay only a short period of time, may apply, things change, and one may marry an American citizen and apply here. But she didn't come here with the expectation as a fiancée does. A fiancée leaves her country, coming to the United States at the invitation of an American citizen, with the good faith intention of marrying her American citizen. So she expressly comes to get married as opposed to being a student. Exactly. All right. That's the express purpose of her coming to the U.S. The second point, of course, is that if Congress had intended an existing marriage at the time of the adjustment of status, it would have been easy enough for Congress to say so, but it didn't say so. And it couldn't have meant that an existing marriage, in my view, because if it did, the result would be to force a man or a woman to continue in a broken marriage, no matter how long it would take our immigration authorities to get around to acting on her application. As this Court well knows, some of those cases take a very, very long time. So we think that couldn't have been the result that Congress intended. And if one looks at the legislative history, any other rule of statutory construction, including the government's own regulations, there's nothing in those to suggest that Congress intended to deprive a person who came to the United States with good faith intention of marrying and did marry, depriving that person of permanent resident status. The object, the overriding object of the legislation was to curtail immigration marriage fraud. In the context of a fiancé, what that meant was that there were many people, prior to the amendment of the legislation in 1986 and 1988, who were using the fiancé process to come to the United States for some reason other than to marry their American citizen petitioner and then trying to find some other way to stay here. So Congress dealt with that by saying a fiancé can adjust her status only on the basis of marriage to the person who brought her to this country, the citizen who had petitioned for her. That's exactly what my client has done. It's unfortunate that her marriage broke apart, but there's no indication that Congress intended to reach that kind of situation. They're only dealing with potential fraud. The object was the person who engaged in fraud, not someone who came to the United States for the express purpose of marrying an American citizen and did so in good faith. I know we don't think so, but suppose that we said the statute is ambiguous. What kind of deference do we owe to the agency? Not very much, because, and I did neglect to mention this in our briefs, this was a decision by one member of the Board of Immigration Appeals. It was an unpublished decision. There are a number of cases in this Court which say, in fact, that it's a very minimal kind of deference under those circumstances. I think the most recent one that I noted was the case of Ortega Cervantes, 501 Fed 3rd, page 1111, which the Court said, when there is a single member of the Board of Immigration Appeals who makes the decision, and it's not a published decision, the Court owes very little deference. And the only deference it owes is to whether or not their argument makes sense. And, of course, in my view, it doesn't. The government argues that we owe Chevron deference. Right. Is that distinguishable from Skidmore? I think so, yes. And why should Skidmore apply in this case? Well, for the very reason that this Court has said, when it's a one-person decision by the Board of Immigration Appeals, and it's an unpublished decision, which was the case here, then the Chevron deference is not the deference that owes to the government, but the Skidmore deference. This was part of a streamlining process? Streamlining process, you mean where the Board of Immigration Appeals simply rubber-stamps a decision by the immigration judge? Is that what you mean? Where they dump 8,000 cases at one time on our Court. Right, yeah. I don't think so, no. Well, it could be. I mean, it's a very brief decision by the Board of Immigration Appeals in which basically they adopted the ruling by the immigration judge. So you could put it in that streamlining category. Is this the first case in this country where this particular unique situation may be unique? As far as I know, it is. So whatever we do probably has to be published, doesn't it? Well, that's fine. I'm trying to think how we would write it. She gets a visa to come over here to marry A, and she marries A. Right. And then while she's married to A, her application is pending. Right. And along comes B, and then she ceases to be married to A and becomes married to B. And the government says, well, that's a very narrow exception to our usual visa process, but if you're still married to the person you came over here to marry, you're okay. But if you change trains and you're going to a different direction now, I don't know how we'd write it to say that that's okay. Well, I think if you simply stick to the language of the statute, the ordinary wording of the statute, it says simply that the individual can apply for a permanent resident status if she marries a citizen petitioner within 90 days, which my client did. And once she's married, her application is a result of or a consequence of that marriage, nothing that says she has to stay married to that individual. That's the ordinary meaning of the words, in my judgment. That's what that says. Well, the whole idea of getting married in common law was that you stayed that way. I'm sorry? In common law, the idea was you stayed married if you got married. Well, I think everybody, hopefully, people get married. We all know that that doesn't happen. Exactly. That's exactly the point. We know that one has all the intentions in the world of staying married, most people do at least, and things happen. This is probably a red herring, but she has a child who has a green card who could apply for some kind of relief at some point to have his mother come over. Wouldn't she have to go home and touch base at the American Embassy in Manila and then come back again? Are you speaking of my particular client or in general terms? In this case. In this case, Mrs. Quain has two daughters who traveled back to Russia, were able to get immigrant visas and turned around and came back, and they're now legal residents in the U.S., which is kind of ironic because two girls are legal residents, but the mother is not. Can they apply for her as a following relative? No. They would have to be – a child would have to be age 21 to do so. Her present husband has filed, but there are issues about whether she should go back to Russia and apply for a visa, which is outside of the record of this particular proceeding. But I think my point is that when someone comes here in good faith with the express intention of marrying her citizen and she does so, her eligibility is a result of that particular marriage. There's nothing in the legislative history or any form of statutory construction, including the government's own regulations, which says she has to stay married. And the object – the reason being, of course, that things do happen. The Immigration Service takes forever sometimes to act on cases, and people should not be required to stay in a broken marriage under those circumstances. What was the – there was a two-year delay here. What is the effect of the two-year delay? Yeah. Well, the obvious effect was that it allowed time for her marriage to fall apart. Had the Immigration Service acted on her application within a reasonable time – it seems to me two years is not a reasonable time for a routine application – she would have been okay because she would have still been married to her husband. What would a reasonable time –  What would a reasonable time have been? Well, that depends, but I would say no more than a few months. Five or six months would be a reasonable time from start to finish. In this case, it took over two and a half years. Let's say she'd gotten her conditional permanent resident status and then this divorce happened. What would the situation then be? Well, if she had conditional resident status, that's something that comes afterwards once the person's been granted permanent residence, so it's not a particular issue here. But if she were granted conditional resident status and she's no longer married, there is a provision in 216 – that is, the conditional resident provision – for a waiver of that requirement when there's been a good-faith marriage and there's been a divorce. So it's right in the statute. Moreover, the 216 – that is, I think it's 1186 in Title VIII – doesn't even apply where the immigration office doesn't get around to approving the application for more than two years after the basic marriage. So there's a real issue about whether that would apply in this case at all. Say it again. Well, Section 216 is the so-called condition subsequent to the grant of permanent resident. And the normal process would be for the husband and wife on the second – just before the second anniversary of the immigrant becoming a permanent resident – would normally file what's called a joint petition to change that two-year condition or to remove that condition and turn it into actual permanent resident status. That's the normal process. However, if the government – You do it unilaterally. That's right. When there's been a divorce and a good-faith marriage, government may waive that joint petition requirement. The other part of the statute is that the conditional resident – the conditional residence provision doesn't even apply if the immigration service has granted the immigrant permanent resident status more than two years after her underlying marriage. So basically, in this particular case, what you're trying to avoid is to have the petitioner go back to Russia and get a visa? Well, she could do that based upon her second marriage. Yeah. She could do that. But – and we're getting into some matters that are outside of the record – there are reasons why it's not a good choice for her, having to do with her presence in the United States for a considerable period of time after the INS denied her application originally. So there's an issue if she went back to Russia, whether she'd be eligible to come back. So that's a possibility, obviously. It's not hiding from that. You mean whether the Russian authorities would let her out? Is that what you're saying? No, not the Russian authorities, particularly, thankfully. But there is a provision that someone who has come to the United States and has been here unlawfully for more than a year cannot come back to the United States. If they leave for at least a period of 10 years, it's waivable. But there's an issue about whether her presence here has been unlawful, and that's an issue that we're trying to litigate elsewhere. But – and if it – who knows what will happen. But that's a separate problem. And that's the reason why she chooses to go forward with her Adjustment of Status application, because that provision, that unlawful presence provision, does not apply for someone who's here and does not leave. He's out. All right. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court. I am Anthony McCash and represent the Attorney General today. Would you keep your voice up? Yes, I will. Thank you, Your Honor. I think it's helpful to describe how the process works and what stage we are actually in in this particular case. When Ms. Choi came over on a K-1 visa, and that is the first step, to get the U.S. citizen to sponsor her for a K-1 visa. She got that. She entered the United States on the K-1 visa. Within 90 days of entering the United States, she has to marry the U.S. citizen who petitioned for her. She did that. After she marries the U.S. citizen, she must apply for conditional lawful permanent residence with the Attorney General. She did that. Subsequent to that, she divorced the petitioner, the one who petitioned, the U.S. citizen. At that point, they adjudicated the application. Had the marriage, had they stayed married, the Attorney General would have granted conditional lawful permanent residence, and the two-year conditional period would have started to run. We did not get to that status in this particular case. And then, as Mr. Unger provided, at 90 days prior to that conditional residence being terminated or ending, they would have to file a joint petition to remove the conditions. Now, in the case of someone who got divorced, not Ms. Choi, within the two-year period, that conditional period, she may be able to file the petition on her own and then ask for a waiver, as Mr. Unger pointed out, within 216, to be able to waive the fact that she's not married at that particular time. But what's important in this case is under 245D, she never got to the conditional status, because as the plain language in that statute points to, her adjustment to a conditional lawful permanent residence, which is the only status she can apply for under 245D, because she entered under a fiancé visa, must be as a result of the marriage. Now, as Judge Goodwin pointed out, there is another case out there, not within this circuit, but in the Fourth Circuit, and it is in our brief, which interpreted 245D and found the language to be unambiguous, plain and clear. Well, let's assume we find it to be ambiguous. What deference do we owe to the agency? You claim Chevron deference, but we have an unpublished opinion, Garcia-Quintero, which says BIA decisions are only given Skidmore deference, when it's an unpublished opinion, which means they're only entitled to a respect proportional to the power to persuade. Why shouldn't that apply here, assuming we find the statute to be ambiguous? Your Honor, and I believe your decision in Morales-Escueta, which is an en banc decision, interpreted a particular statute, and I don't recall whether the board's decision in that particular case was published. I don't believe it was. And this Court looked at it and said, if it's a permissible construction of the statute, whether we agree with it or not, if it's permissible, we'll accord it Chevron deference. And I understand some other cases within the circuit have talked about Skidmore deference. So I would say under Chevron deference, under Morales-Escueta, an en banc decision, that would apply. But even if you applied Skidmore deference, this particular interpretation, which if you went to the deference and did not take the route that the Fourth Circuit took in looking at the same language and the same statute, which involved very similar facts that you have before you, that would apply. Also, the construction by the agency is permissible. And it was not, getting back to Judge Perkinson's reference, it was not a streamlined decision. It was not a one-line decision that we, the results of the agency, the decision below are the agency's opinion. It was about two pages of analysis under the plain language and also under the regulation, which used a slightly different term than the regulation, which is the alien sought adjustment within this 245D, based upon the marriage. And I'd just like to go back. I think you're talking about, is it Markovsky case in the Fourth Circuit? Yes, Your Honor. That case seems to me to be distinguishable, because the alien sought adjustment through a petition filed by his employer. That is the, that is a factor that's not in this case. But when the Fourth Circuit looked at the language within the statute, it's interesting to note that because he came in on a visa, on a fiancé visa, the Fourth Circuit said, that language is plain. That is the only way he can adjust. He has to adjust within 245D. And the Fourth Circuit stated, that statute makes no distinction between aliens who got married and then divorced, and those who failed to get married altogether. Now, it's clear within this circuit and other circuits, an alien who fails to get married altogether will not be able to adjust. I think that's your decision in K-law. Okay. But we have, she got married within a period of 90 days. And her application was a result of that marriage, was it not? The application for conditional lawful permanent residence. That's correct, Your Honor. And the fact that it was a good-faith marriage isn't being challenged. Well, Your Honor, that's an interesting point. The good-faith marriage would not be challenged at this particular time, and that makes sense, because she gets conditional status. In other words, if you do what you said you would do, okay, and at the time the Attorney General gives you that application for adjustment, and then adjusts, he is going to give you that conditional residence. Now, at the end of two years, that's when they will look at whether or not it was a good-faith marriage to remove those conditions and give her lawful permanent residence. It's at that time that the agency would look at whether it's bona fide or not. That's the difference because of this conditional status. The Attorney General said if you apply for conditional lawful permanent residence, and you, as a result of your marriage, and we maintain that is a marriage that is valid and has not been terminated by divorce at the time of adjudication, because the operative verdict is in that statute, may adjust. What if the adjudication was four years later? They just had thousands and thousands of applications. Is she supposed to stay married despite a failing marriage until the authorities get around to her case? Your Honor, I would say that that is within the statutory interpretation of that language, as is, to take the inverse of that, say they, we have the same facts here, but instead of divorcing at two years later, they divorce at six months after they filed the petition. Well, under that reading, Your Honor, that is, you would have to follow the same adjustment. She is applying as a result of that marriage, albeit it was divorced maybe 30 days after she filed for the application for conditional lawful permanent residence. The argument does not change. It's still, if you accept the petition's argument, it's still as a result of the marriage, even though it was terminated, you know, 180 days. But that would not be a government delay, and I guess my question goes to why should she be penalized for the government's delay? Your Honor, I understand your concern, but the law states, and I think the conditions in 245D state it has to be as a result, and I think Well, she did apply as a result of her marriage. Well, again, Your Honor, that would be the same if the agency took only, if they got divorced, I think, about two years after the marriage. But if she had got divorced 60 days after the marriage, the interpretation and the agency adjudicator application at the same time, let's say two years later, their argument is still the same. It is still a result of the marriage. Okay, they were only married for 60 days as opposed to two years in this case, but we're still applying for conditional lawful permanent residence as a result of that marriage that dissolved about If they get divorced and she can come in and ask the temporary provision, you know, to be removed, and at that time, the bona fides of the marriage can be determined. After she gets to the, after she gets her conditional lawful permanent residence. In other words, yes, if she had gotten that residence, which she did not get, I see my time is up, but if she had gotten that We're all willing to give the Justice Department time. Thank you. We appreciate that, Your Honor. If she had gotten that conditional lawful permanent residence, okay, that And you're right, Your Honor, at some point What if she would have gotten it had the government not unreasonably delayed? Well, that is if you interpret the two years as an unreasonable delay, but, and Your Honor, I understand the court's concern about the delay. I don't, I'm not here to say it wasn't reasonable, it wasn't unreasonable. It did come about two years or so after the marriage, two and a half, somewhere in that area. But the statute, and I think, again, it goes somewhat to the Fourth Circuit's decision, because while it is somewhat different in that they applied on an I-140 petition, the Fourth Circuit is clear in that language and says this is the only way you can adjust on this particular visa, that's it. And I think Congress was aware of cases where, as I explained, you fulfill the 90 days, you get married within the 90 days, and then you apply for your conditional lawful permanent residence. There are not too many of these cases. This is the first one I've ever seen. Your Honor, you're exactly right. There aren't many cases. And in reviewing this, preparing the brief, the only case that the Justice Department could find that interpreted 245D, which is the statute at issue, is that Fourth Circuit case. And as I mentioned in the brief, it is a case of first impression. I believe there's, I think, three pending cases within this circuit now that have this issue before the Court. I think the early one that was scheduled, if it was done, it was probably more knowledgeable about this. The early case that was the first case that was scheduled, submitted, has this issue. And there is a third case out there that has not been scheduled for argument yet that's out there. And, Your Honor, that's true. It's a very novel issue, and there isn't a lot to draw from in the other circuits, and certainly within this circuit. Thank you, Your Honor. The point I wanted to make, to respond to what Mr. Nicastro has said, if the Court rules in favor of my client, that does not mean she'll be actually granted permanent resident status. The case will go back before an immigration judge who will consider her application in the exercise of discretion. And in doing so, he can take into account the amount of the delay, the time in which my client decided to get a divorce, the reasons for the divorce, and all kinds of discretionary factors that would have to be taken into account. So the fact that, again, this question of unreasonable delay, the reasons for the divorce, and so forth, would be considered by the immigration judge in making an actual decision on whether to grant her adjustment of status.
judges: Goodwin, Pregerson, Nelson